# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2289 | **DATE** | 11/22/2002 |
| **CASE TITLE** | Jet, Inc., et al vs. Shell Oil Co., et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motions to dismiss (9-1, 10-1) are granted in part and denied in part. Counts 2,3, and 6 are dismissed as to plaintiff Puthusserill, with leave to amend on or before December 10, 2002. Defendants are directed to answer, on or before December 3, 2002 Puthusserill's claims that were not dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JET, INC., d/b/a GARFIELD SHELL; JL QUICK, INC., d/b/a SHELL FOOD MART; TVA CORPORATION d/b/a ROBERT ROAD SHELL; JT ENTERPRISES OF CHICAGO, INC., d/b/a RIDGELAND SHELL; JOHN PUTHUSSERILL d/b/a HICKORY SHELL FOOD MART, <br><br> Plaintiffs, <br><br> vs. <br><br> SHELL OIL COMPANY; EQUILON ENTERPRISES, LLC, d/b/a SHELL OIL PRODUCTS US; EQUIVA SERVICES, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) Case No. 02 C 2289 ) ) ) ) ) ) ) ) |

**DOCKETED**
NOV 2 5 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiffs have filed suit against defendants, alleging violations of the Petroleum Marketing Practices Act, common law fraud, and violations of the Illinois Franchise Disclosure Act and Uniform Deceptive Trade Practices Act. Defendants have moved to dismiss counts 1 through 6 of plaintiffs' complaint.[1] For the reasons stated below, defendants' motion is granted in part and denied in part.

### FACTS

The plaintiffs in this case are four actual and one former Shell-brand gasoline station

---

[1] Plaintiffs' complaint contains three other counts, but they are not at issue in defendants' motions to dismiss. Counts 7 and 8 allege interference with prospective economic advantage and violations of the Illinois Uniform Commercial Code, respectively. Count 9 seeks declaratory relief.



franchisees. Plaintiffs Jet, Inc., JL Quick, Inc., TVA Corporation, and JT Enterprises of Chicago are current franchisees operating their stations in Illinois under franchise agreements with defendant Equilon. For purposes of simplicity and for reasons that will become apparent below, we refer to the current franchisees collectively as the "renewed plaintiffs." The other plaintiff, John Puthusserill, operated a Shell gas station under a franchise agreement until August 2001. On a motion to dismiss, we accept the plaintiffs' allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construe any ambiguities in the complaint in plaintiffs' favor, *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

The three defendants are Shell Oil Company (Shell), Equilon Enterprises LLC (Equilon), and Equiva Services LLC (Equiva). Shell is a well-known company engaged in the business of producing and distributing petroleum products. Shell was the original party to plaintiffs' initial franchise agreements. In 1998, Shell assigned these franchise agreements to Equilon. Equilon began as a joint venture between Shell and Texaco, another oil company, to combine their refining and marketing operations in the western United States. At Equilon's inception, Shell owned fifty-six percent of the company, and it recently acquired the balance of Texaco's interest. The third defendant, Equiva, is an administrative support services company. It is owned jointly by Equilon and another company that is itself owned in large part by Shell. Plaintiffs allege that each defendant is the alter ego of the others and that it is appropriate to pierce the corporate veil and hold each defendant liable for the actions of the others.

At the heart of this dispute are franchise renewal agreements, consisting of a retail sales agreement and a retail facility lease, that Equilon presented to plaintiffs. Plaintiffs contend that these agreements differed substantially from previous ones. The renewals, they claim, contained

illegal and unconscionable provisions designed to undermine plaintiffs' ability to remain competitive and diminish the value of plaintiffs' franchises. The agreements allegedly contained unlawful waivers, forfeitures, limitations of liability, and reductions of the applicable statute of limitations governing claims against defendants. They also contained allegedly unconscionable penalties in the form of liquidated damages, commercially unreasonable rent increases, excessive transfer and maintenance fees, discriminatory pricing mechanisms, and an increase in dealer tank wagon prices. Plaintiffs claim that defendants also attempted unreasonably to restrain plaintiffs' ability to sell their interest in the franchises through a provision expressly reserving to Equilon the right to withhold consent of any proposed sale.

Plaintiffs allege that defendants did not propose these changes to the franchise relationship in good faith or in the normal course of business. Rather, they claim, defendants had the ulterior motive of preventing the franchises' renewal. Plaintiffs claim the agreements were part of a deliberate plan to convert franchised stations into company operated stations and to reduce the number of franchises in competition with company operated stations. According to plaintiffs, defendants intentionally drafted these renewal agreements so plaintiffs would elect not to renew their franchises, allowing defendants to avoid millions of dollars in buy-out costs.

Nor were the renewal terms negotiable. According to plaintiffs, defendants presented the agreements on a take-it-or-leave-it basis. Plaintiffs were informed that unless the renewal agreements were accepted "as is" within sixty days, their franchises would not be renewed.

Plaintiff Puthusserill objected to several of the new provisions and attempted to negotiate some of them with Equilon. Because he did not execute the agreement by the sixty-day deadline, Equilon and Equiva sent Puthusserill a notice of nonrenewal. The other plaintiffs met the

deadline, but they signed the renewal agreements under protest.

Defendants have moved to dismiss counts 1 through 6 of plaintiffs' complaint. In a separately filed motion, defendants Shell and Equiva have moved to dismiss counts 1 through 5 on different grounds. For the reasons stated below, we grant defendants' motions to dismiss as to the renewed plaintiffs and grant them in part and deny them in part as to Puthusserill.

## DISCUSSION

When considering a motion to dismiss, the Court reads the complaint liberally, granting the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). We address in turn defendants' arguments as to each count of plaintiffs' complaint.

### A. Count 1: PMPA

Defendants submit that count 1 should be dismissed because the renewed plaintiffs are unable to state a claim against them under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801-2841. The PMPA regulates the termination and nonrenewal of petroleum franchise relationships, protecting franchisees from arbitrary or discriminatory termination or nonrenewal. The Act prohibits a franchisor from terminating a franchise during the term of a franchise agreement or not renewing it at the end of a term, unless the termination or nonrenewal is based on specified grounds and meets the Act's notice requirements. *Id.* § 2802(a). The Seventh Circuit has identified three concerns that the PMPA was intended to address:

> that franchisee independence may be undermined by the use of actual or threatened termination or nonrenewal to compel compliance with franchisor marketing policies; that gross disparity of bargaining power may result in franchise agreements that amount to contracts of adhesion; and that termination or nonrenewal may disrupt the reasonable expectations of the parties that the

4

franchise relationship will be a continuing one.

*Beachler v. Amoco Oil Co.*, 112 F.3d 902, 904 (7th Cir. 1997) (quoting *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1216 (7th Cir. 1982) (citing S. Rep. No. 95-731, at 17-19 (1978), *reprinted in* 1978 U.S.C.C.A.N 873, 875-77)).

To effectuate these objectives, the PMPA confers on franchisees a cause of action for damages or injunctive relief if a franchisor terminates or fails to renew a franchise for impermissible reasons. 15 U.S.C. § 2805(a), (b). A franchisor may decline to renew a franchise if the franchisee refuses to agree to changes or additions in the renewal agreement. But a failure to agree can form the basis for nonrenewal only if:

> (i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and
>
> (ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for the benefit of the franchisor or otherwise preventing the renewal of the franchise relationship.

*Id.* § 2802(b)(3)(A).

To maintain a cause of action under the statute, "the franchisee station owner has the initial burden of showing that the franchise has been terminated or not renewed." *Duff v. Marathon Petroleum Co.*, 51 F.3d 741, 744 (7th Cir. 1995); 15 U.S.C. § 2805(c). Plaintiffs must therefore allege either a termination or nonrenewal of the franchise relationship in order to state a claim under the PMPA. *See id.* Defendants maintain that the renewed plaintiffs' PMPA claims should be dismissed because they do not, and cannot, allege a termination or nonrenewal. Defendants argue that because the renewed plaintiffs accepted the renewal terms and are currently operating their stations under franchise agreements, they cannot state a claim under the

Act.

The renewed plaintiffs accordingly ask the Court to recognize a cause of action for constructive termination under the PMPA.[2] They contend that "the circumstances surrounding presentation of the renewal franchise agreements under which [the renewed] Plaintiffs are currently operating" constitute a violation of the Act. Pls.' Resp. to Defs.' Mot. to Dismiss Counts I Through VI, at 2. They contend defendants violated the Act because the changes and additions were not made in good faith or the normal course of business but rather were offered for the purpose of preventing plaintiffs from renewing their franchises. The renewed plaintiffs also contend that defendants violated the Act by presenting the renewal agreements on a take-it-or-leave-it basis, so that they were coerced into accepting illegal and unconscionable terms under the threat of certain nonrenewal.

Because the Seventh Circuit has not spoken directly on this matter, we must determine whether, if presented with the opportunity to do so, it would recognize a cause of action for constructive termination under the PMPA. The Seventh Circuit has provided some general guidance for interpreting this statute. As remedial legislation, "the PMPA must be given a 'liberal construction consistent with its overriding purpose to protect franchisees.'" *Beachler*, 112 F.3d at 904 (quoting *Brach*, 677 F.2d at 1221). However, the court has also cautioned that because the PMPA diminishes franchisors' property rights, it "should not be interpreted to reach beyond its original language and purpose." *Id.* (quoting *May-Som Gulf, Inc. v. Chevron U.S.A.*,

---

[2]Plaintiffs do not use the term "constructive termination" in their complaint. But it is clear from their response to defendants' motion that it is under such a theory that they hope to proceed. As they do not distinguish between the concepts of constructive termination and constructive nonrenewal, we refer to constructive termination to encompass both concepts.

*Inc.*, 869 F.2d 917, 921 (6th Cir. 1989)) (internal quotation marks omitted). Discussing the Act's legislative history, the Seventh Circuit has said "Congress was seeking to strike a balance between the need to protect franchisees and the need to preserve for franchisors 'adequate flexibility so that [they] may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences.'" *Id.* (quoting S. Rep. No. 95-731, at 19) (alteration in original). The PMPA therefore does not require that all the provisions of a franchise agreement be continued when that agreement is renewed; franchisors are free, within the limitations imposed by § 2802(b)(3)(A), to introduce, and insist upon, changes to the franchise relationship. This is true even if franchisees find these changes disadvantageous. Likewise, the PMPA provides a remedy for franchisees if they suffer nonrenewal for refusing terms that violate the Act.

Keeping in mind the Seventh Circuit's admonition that the PMPA is a "product of compromise," we consider the renewed plaintiffs' constructive termination argument. *Id.* at 905 (quoting *Hilo v. Exxon Corp.*, 997 F.2d 641, 645 (9th Cir. 1993)) (internal quotation marks omitted). We begin with the plain language of the statute itself. *Lewis v. United States*, 445 U.S. 55, 60 (1980) ("[I]n any case concerning the interpretation of a statute the 'starting point' must be the language of the statute itself."); *U.S. v. Mayo*, 721 F.2d 1084, 1092 (7th Cir. 1983). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prods. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The PMPA defines "nonrenewal" as "a failure to reinstate, continue, or extend the franchise relationship . . . at the conclusion of the term, or on the expiration date, stated in the relevant franchise." 15 U.S.C. § 2801(14)(A). "Termination" is defined to include cancellation

7

of the franchise relationship, *id.* § 2801(17), and the Act's legislative history makes clear that "termination" refers to the cancellation of a franchise "during the term of the franchise agreement," S. Rep. No. 95-731, at 15. The plain language of the statute contemplates an actual ending of the franchise relationship and therefore does not support a cause of action for constructive termination.

We turn, then, to whether the PMPA permits an implied cause of action for constructive termination. We conclude that it does not. In reaching this determination, we rely on the availability of adequate relief under the Act's literal terms coupled with the Seventh Circuit's admonition that we must not interpret the PMPA to "reach beyond its original language." *Beachler*, 112 F.3d at 905.

Given the PMPA's "overriding purpose to protect franchisees," *Brach*, 677 F.2d at 1221, our determination might be otherwise if the literal terms of the Act did not provide adequate relief for franchisees presented with coercive renewal agreements on a take-it-or-leave-it basis, short of sacrificing their established business. For Congress was clearly concerned not just about actual terminations and nonrenewals but also about *threatened* terminations and nonrenewals. S. Rep. No. 95-731, at 18 ("[T]he prospect of non-renewal of the franchise relationship hangs over the relationship and may manifest itself during the franchise term as a means by which the franchisor may compel the franchisee to comply with the franchisor's marketing policies. . . . The prospect of non-renewal for arbitrary or discriminatory grounds threatens the independence of the franchisee as a competitive influence in the marketplace.").

But even though Congress contemplated the danger of such threats, it did not expressly

8

make them actionable. This does not mean, however, that a franchisee must first go out of business in order to obtain relief from improper nonrenewal. A franchisee presented with a renewal agreement so coercive that it suggests that the franchisor's ulterior motive is to prevent renewal can refuse the agreement. If the franchisor is unwilling to renew, it must notify the franchisee of nonrenewal ninety days before the nonrenewal is to take effect. 15 U.S.C. § 2804(a). During this ninety-day interim, the franchisee may seek a preliminary injunction to prevent enforcement of the nonrenewal. Under the protection of an injunction, the franchisee can continue operating its business on the terms of the previous agreement while the merits of its action against the franchisor are resolved. The availability of injunctive relief ensures that a franchisee need not go out of business before seeking relief from improper nonrenewal. As the Seventh Circuit has stated, "Congress' remedial purpose in enacting the PMPA is reflected in the provision providing for preliminary injunctive relief." *Beachler*, 112 F.3d at 905.

Our determination that this is the remedy Congress intended for threats is consistent with and reinforced by the reduced burden for obtaining a preliminary injunction under the Act. *Id.* § 2805(b)(2). As the Seventh Circuit has emphasized, a franchisee is "entitled to a preliminary injunction under the Act based upon a lesser showing than would be required in the ordinary case" under Federal Rule of Civil Procedure 65. *Beachler*, 112 F.3d at 905. Under the Act, a district court "is required to grant," *id.*, a preliminary injunction if:

(A) the franchisee shows –
    (i) . . . the franchise relationship of which he is a party has not been renewed, and
    (ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and
(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which

9

> would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

15 U.S.C. § 2805(b)(2). A franchisee that has been given notice of nonrenewal thus need only prove "a reasonable chance of success on the merits" of a PMPA claim and that "the balance of hardships tips in its favor." *Beachler*, 112 F.3d at 905. A franchisee "need not also establish that it would be irreparably harmed in the absence of an injunction." *Id.* By lowering the required showing, the Act's remedial scheme prevents nonrenewal from taking place until a franchisee's cause can be heard on the merits.

This remedy may not be perfect in the renewed plaintiffs' eyes. But the PMPA reflects a balancing of competing interests. To recognize an implied cause of action for constructive termination when Congress has both contemplated threatened termination and provided an adequate remedy for it "would upset the balance the PMPA seeks to achieve through competing rights granted to franchisees and franchisors, respectively." *Meghani v. Shell Oil Co.*, 115 F. Supp. 2d 747, 758 (S.D. Tex. 2000); *cf. Beachler*, 112 F.3d at 907 (holding that a franchisor's assignment of its franchise agreements does not constitute a termination or nonrenewal under the PMPA unless the assignment breaches an "essential component of the statutory franchise or violates state [assignment] law"). Count 1 is therefore dismissed as to the renewed plaintiffs.

Plaintiff Puthusserill is a different story. The complaint alleges that Puthusserill refused to sign the agreement as presented and requested that certain terms be altered. Because he did not sign the agreement without modification before the stated deadline, Equiva, on behalf of Equilon, sent him a notice of nonrenewal based on his failure to agree to the new terms. We infer from the allegations that as a result Puthusserill no longer operates a Shell-brand franchise.

Because Puthusserill has met his "initial burden of showing that [his] franchise has been terminated or not renewed," he can maintain a cause of action against Equilon, his direct franchisor. *Duff*, 51 F.3d at 744.

The question remains whether he can state a claim against Shell and Equiva. Shell and Equiva contend that they are not proper defendants because they are not "franchisors" under the PMPA. They contend that to state a claim under the Act, a plaintiff must have a direct franchise relationship with the defendant. Shell states that it ceased being Puthusserill's franchisor in 1998 when it assigned its franchise agreements to Equilon. Equiva submits that it has never been a service station franchisor, but is rather an administrative services company that has never been a party to a franchise agreement with Puthusserill.

Puthusserill makes two arguments in response. First, he contends that the PMPA's definition of "franchisor" is broad enough to encompass Shell and Equiva even though they may not have been in a direct franchise relationship with him. The PMPA defines a franchisor as "a refiner or distributor . . . who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(3). The statute goes on to define "refiner" as "any person engaged in the refining of crude oil to produce motor fuel, and includes any *affiliate* of such person." *Id.* § 2801(5) (emphasis added). An "affiliate" is, in turn, defined as "any person who (other than by means of a franchise) controls, is controlled by, or is under common control with, any other person." *Id.* § 2801(15).

The complaint alleges that at Equilon's inception, Shell owned fifty-six percent of
11

Equilon and that it has recently acquired full ownership, and therefore control, of Equilon. Compl. ¶¶ 8, 10. Puthusserill also alleges that Equiva is largely controlled by Equilon and Shell. Puthusserill submits that Shell and Equiva are consequently Equilon's affiliates and thus franchisors under the Act. Although control is necessary for an affiliate to be considered a "franchisor" under the PMPA, it is not sufficient. Control may make the affiliate a refiner under the act, but, to be a franchisor, a refiner must "authorize[] or permit[], under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel." 15 U.S.C. § 2801(3). The complaint contains no allegations that it was either Shell or Equiva that authorized Puthusserill to use the Shell trademark in relation to his sale of gasoline. His contention that they fit within the PMPA's definition of franchisor therefore fails.

Puthusserill's second argument is that Shell and Equiva may be liable under the PMPA as the alter egos of Equilon. In *Papa v. Katy Industries, Inc.*, 166 F.3d 937 (7th Cir. 1999), the Seventh Circuit articulated the test for affiliate liability under a federal statute. *Id.* at 940-41 (articulating the test in the Title VII context but stating "we cannot think of a good reason why the legal principles governing affiliate liability should vary from statute to statute, unless the statute, or the particular policy that animates the statute, ordains a particular test"); *Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001) ("[T]he principles governing affiliate liability should apply 'across the full range of American law.'" (quoting *Papa*, 166 F.3d at 941)). A corporate entity can be liable as an affiliate under a federal statute if it forfeits its limited liability. *Worth*, 276 F.3d at 259. The most "common way for an affiliated corporation to forfeit its limited liability," *id.*, is where the "the traditional conditions [are] present for 'piercing the corporate veil,'" *Papa*, 166 F.3d at 940. Such conditions exist if, first, "there [is] such unity of interest and ownership

[between the corporations] that the separate personalities . . . no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Worth*, 276 F.3d at 260 (quoting *Van Dorn Co. v. Future Chem. and Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985)) (internal quotation marks omitted).

Defendants argue that Puthusserill has not adequately alleged that Shell and Equiva are the alter egos of Equilon. They contend that Puthusserill must allege "ultimate facts" and "specific facts" that would establish that they are Equilon's alter egos. Shell and Equiva misstate the federal pleading standard. A complaint "cannot be dismissed on the ground that it is conclusory or fails to allege facts. The federal rules require . . . only that the complaint state a claim, not that it plead the facts that if true would establish . . . that the claim was valid." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

As Shell and Equiva acknowledge in their brief, Puthusserill has alleged that the three defendants have "engaged in conduct inconsistent with the maintenance of separate and distinct identities . . . including . . . commingling of corporate revenues and funds, using corporate revenues and funds to pay the expenses and debts of the other corporate Defendants, failing to keep separate and/or adequate corporate records, and to hold regular meetings, and using multiple corporate entities to perpetuate a fraud against Plaintiffs and the general public." Compl. ¶ 14. Puthusserill also alleges that adherence to the fiction of corporate separateness would sanction a fraud or promote injustice. *Id.* ¶ 15. These allegations satisfy both parts of the affiliate liability test, and, at this stage, we must accept these allegations as true. As such, they are sufficient to state a PMPA claim against Shell and Equiva under an "alter ego" theory. Shell and Equiva's motion to dismiss count 1 against them is therefore denied.

B.  **State Law Claims**

Having dismissed the renewed plaintiffs' PMPA claims, their only remaining claims are state law claims. A federal court may, at its discretion, decline to exercise supplemental jurisdiction over state law claims that remain after dismissal of the claims over which the court originally had subject-matter jurisdiction. 28 U.S.C. § 1367(c)(3). We decline to exercise supplemental jurisdiction over the renewed plaintiffs' state law claims. No prejudice will result from requiring the renewed plaintiffs to pursue their state claims in state court.

Counts 2 through 6 are therefore dismissed as to the renewed plaintiffs. Count 5 is dismissed in its entirety, as Puthusserill is not a party to that charge. Although not at issue in defendants' present motions, counts 7, 8, and 9 – alleging violations of state law and praying for declaratory relief – are also dismissed as to the renewed plaintiffs. We therefore analyze defendants' arguments for dismissal of the remaining claims only with regard to Puthusserill.

1.  **Count 2: Common Law Fraud**

Puthusserill has alleged that unnamed Equilon representatives fraudulently misled him into thinking that he could not challenge the rent increase contained in the franchise renewal agreement. He states that Equilon representatives failed to disclose the availability of an "interim rent challenge" and misrepresented that he could do nothing to obtain relief from the increased rent. He claims these measures were intended to compel him to accept the increased rent without challenge.

Defendants move to dismiss Puthusserill's fraud claim for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that fraud

14

claims be pleaded with particularity. A plaintiff must "allege the who, what, where, and when of the alleged fraud." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). We agree that Puthusserill fails to do so. The complaint does not "give the dates on which any of the fraudulent representations or omissions were made," nor does it "reveal what exactly each agent said to [the] plaintiff." *Id.* We therefore dismiss count 2 of Puthusserill's complaint.

### 2. Counts 3 & 4: Illinois Franchise Disclosure Act

All defendants move to dismiss Puthusserill's claims under the Illinois Franchise Disclosure Act, 815 ILCS 705/1–705/44. One of Puthusserill's claims is that defendants engaged in fraudulent practices in connection with the offer or sale of a franchise in violation of 815 ILCS 705/6. Defendants assert, and Puthusserill does not dispute, that this count must be pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). Defendants argue that Puthusserill has not met this burden. For the reasons discussed above, we agree. Count 3 of Puthusserill's complaint is therefore dismissed.

Puthusserill's remaining claim under the Act (count 4) is that defendants charged different prices to different dealers within his geographic marketing area for the same motor fuels. He claims that this conduct constituted unlawful discrimination in violation of 815 ILCS 705/18. Defendants, including Equilon, argue that Puthusserill does not state a claim under the Act because he has not adequately alleged the existence of a franchise relationship: "Plaintiffs do not allege any facts whatsoever to establish their standing under the Franchise Act. Plaintiffs conclusorily state that they are 'franchisees,' that Defendants are "franchisors,' and their

businesses are 'franchises' under the act." Defs.' Mot. to Dismiss Counts I Through VI of Pls.' Compl., at 8. They contend that "[s]uch conclusory allegations without supporting factual assertions are insufficient to support their claims under the Franchise Act." *Id.* They assert that to state a claim, Puthusserill must allege facts that establish the existence of each and every element of the Act's definition of "franchise."

Defendants are incorrect. A plaintiff need not allege each "'element' of a 'cause of action.'" *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000). A complaint need only specify the "bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs*, 286 F3d at 439 (citing *Beanstalk Group, Inc. v. AM Gen.Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)). Puthusserill has met this minimal standard.

Defendants Shell and Equiva make the alternative argument that Puthusserill cannot state a claim against them under the Franchise Disclosure Act because it was Equilon, not they, who was Puthusserill's franchisor. Because Equilon was the actual party to his franchise agreement, if Puthusserill is to proceed against Shell and Equiva, it must be on an alter ego theory. Defendants make the same argument as they did in regard to the PMPA, namely that Puthusserill has not alleged the "ultimate facts" and "specific facts" necessary to adequately plead alter ego. Defs.' Mot. to Dismiss Counts I Through V of Pls.' Compl., at 5, 6.

Under Illinois law, a corporation is "separate and distinct as a legal entity from . . . other corporations with which it may be affiliated." *Main Bank of Chi. v. Baker*, 86 Ill. 2d 188, 204, 427 N.E.2d 94, 101 (1981). Like the Seventh Circuit, Illinois courts will disregard the separate

corporate identity of one corporation and treat it as the alter ego of another if two requirements are met: "first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn*, 753 F.2d at 569-70 (7th Cir. 1985) (quoting *Macaluso v. Jenkins*, 95 Ill. App. 3d 461, 464, 420 N.E.2d 251, 255 (1981)) (alterations in original). As stated above, Puthusserill's allegations satisfy both parts of the affiliate liability test and are therefore sufficient for count 4 to survive a motion to dismiss.

### 3. Count 6: Illinois Deceptive Trade Practices Act

Puthusserill alleges that defendants violated the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1–7, which was intended to cover "conduct involving either misleading trade identification or false or deceptive advertising," Prefatory Note, 815 ILCS 510. Puthusserill cites various misrepresentations, failures to disclose, and other activities that he claims create "a likelihood of confusion or misunderstanding." Compl. ¶ 133. Among these are defendants' plan to eliminate franchisees and convert franchised stations into company operated stations; their failure to disclose the availability of a rent challenge mechanism; and their charging of excessive rents and fees. Section 510/2 lays out the types of conduct that violate the Act. Even after scouring the comments following this provision, it is not clear to this Court how defendants' conduct falls within any of the provision's subsections. We suspect it is unclear to defendants as well. Puthusserill's laundry list of allegations is therefore insufficient to put defendants on notice as to how to respond to the charges. *Cf. Higgs*, 286 F.2d at 439 (stating that plaintiffs do not have to plead facts or legal theories, but that plaintiff's complaint "would be insufficient" if

17

defendant "would not have known how to respond" to the charges). Defendants' motion to dismiss count 6 is therefore granted.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss [Docket item nos. 9-1, 10-1] are granted in part. Count 1 is dismissed as to plaintiffs Jet, JL Quick, TVA, and JT for failure to state a claim, and the remaining claims made by these plaintiffs are dismissed pursuant to 28 U.S.C. § 1367(c)(3). Counts 2, 3, and 6 are dismissed as to plaintiff Puthusserill, with leave to amend on or before December 10, 2002. The motions to dismiss are otherwise denied as to Puthusserill. Defendants are directed to answer, on or before December 3, 2002, Puthusserill's claims that were not dismissed.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 22, 2002